```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
VINCENT WILLIAMS,                       :
                                        :
                    Plaintiff,          :    18cv7070 (DLC)
          -v-                           :
                                        :    OPINION AND ORDER
NATIONAL RAILROAD PASSENGER             :
CORPORATION (AMTRAK), AMTRAK POLICE     :
OFFICER Y. SANTIAGO (Badge No. 307),    :
in his Official and Individual          :
Capacities, AMTRAK POLICE OFFICER W.    :
GONZALEZ(Badge No. 301), in his         :
Official and Individual Capacities,     :
AMTRAK POLICE OFFICER JOHN DOE NO. 1    :
an as yet unidentified AMTRAK Police    :
Officer in his Official and Individual  :
Capacities,                             :
                                        :
                    Defendants.         :
                                        :
----------------------------------------X
```

APPEARANCES:

For the Plaintiff:
Joel Martin Gluck
305 Broadway, Suite 1427
New York, New York 10007

For the Defendants:
Ronald E. Joseph
Angelica A. Cancel
Landman Corsi Ballantine & Ford P.C.
120 Broadway, 13th Floor
New York, New York 10271

DENISE COTE, District Judge:

    Defendants National Railroad Passenger Corporation ("Amtrak"), Amtrak Police Officer Santiago ("Santiago") and Amtrak Police Officer Gonzalez ("Gonzalez") (collectively,

"Defendants") have moved for sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(a). For the reasons that follow that motion is granted.

## **Background**

The factual background of this case is more fully set forth in an Opinion and Order of July 9, 2019, which granted summary judgment to the Defendants. See Williams v. Nat'l R.R. Passenger Corp. (Amtrak), 18cv7070(DLC), 2019 WL 2992329 (S.D.N.Y. July 9, 2019). In short, the undisputed facts indicate that Williams was detained and questioned by Officers Gonzalez and Santiago on August 6, 2015 after a sixteen year old male complained to the officers that Williams had looked under the bathroom stall in a Penn Station bathroom and taken photographs of the complainant with his phone. Williams was brought to an Amtrak Police command center where he gave Gonzalez permission to search his cell phone (the "2015 Phone"). Gonzalez did not find pictures of the complainant on the 2015 phone. He returned the phone to Williams and released him.

On August 6, 2018, plaintiff Vincent Williams ("Williams") sued Officers Santiago and Gonzalez, alleging civil rights violations under state and federal law. On November 16, defense counsel requested production of the 2015 Phone and its SIM Card. On January 14, 2019, plaintiff's counsel Mr. Joel Gluck, in his

Responses to Defendants' Demands, stated that his client did not believe he was in possession of either item.

On January 23, Mr. Gluck informed defense counsel that he was in possession of the 2015 Phone and was preparing a copy of its contents, but that Williams was not in possession of its SIM card. On January 25, defense counsel filed a letter with the Court seeking an Order directing plaintiff to produce the contents of the 2015 Phone and the SIM card; Mr. Gluck had failed to respond to multiple voicemails and emails from defense counsel. An Order of February 8 directed the plaintiff to produce copies of the contents of the 2015 Phone, as well as the SIM card by February 12, 2019, or to show cause why this action should not be dismissed for failure to cooperate in discovery.

On February 12, Mr. Gluck provided the contents of a phone the plaintiff was purportedly using at the time of the Penn Station incident in 2015, but did not provide the SIM card. He represented to defense counsel that his client did not have a SIM card for that phone, but did not make any submission to the Court explaining his failure to produce the SIM card.

A conference was held on February 26. At that conference, Mr. Gluck again represented that his client did not have the SIM card for the 2015 Phone. He objected to providing the physical phone, in addition to a copy of its contents, on relevance grounds. Defense counsel explained that, according to a

3

potential defense expert, if Williams had taken a photograph of the complainant and then erased it, it is possible that an expert analysis of the phone would reveal if a photograph was taken and then deleted, even though the image itself could not be recovered. Defense counsel, at that conference, requested that the case be dismissed for failure to comply with a court order. The Court reserved decision on that request until after the plaintiff's deposition, which took place on March 1. The Court again ordered the plaintiff to produce the 2015 Phone, as well as its SIM card, if he had the SIM card.

On March 1, at his deposition, Williams informed defense counsel that he had not removed the SIM card from his phone, and that he had informed his attorney, Mr. Gluck, that the SIM card was in the phone. He produced a phone, which contained a SIM card, and represented that this was the phone that he had in his possession at the time of the Penn Station incident. The phone was turned over for examination by defendants' expert, and Williams agreed to meet with that expert to unlock the phone using his fingerprint.

Later that day, Mr. Gluck contacted defense counsel to inform him that Williams had produced the wrong phone, and that the correct phone was in Mr. Gluck's office. Confusingly, Mr. Gluck contacted defense counsel again later that afternoon, this time to alert him that he had been mistaken and Williams had, in

4

fact, produced the correct phone at his deposition. Nonetheless, the plaintiff provided the second cell phone for examination by defendants' expert.

Defendants' expert met with Williams on March 4, 2019. After examining the two phones, the expert concluded that neither phone could have been the phone in use at the time of the 2015 Penn Station incident. The phone provided at the deposition was manufactured in June 2016. The second phone was manufactured in Korea on July 31 or August 1, just days before the August 6, 2015 incident. The earliest call recorded on that phone was received on October 3, 2016. The earliest logged text message was from September 5, 2015. The expert found images on the phone that had been taken before August 6, 2015, but that were not imported to the device until well after August 6, 2015. Based on his examination of this data, the defendants' expert concluded that neither phone was the 2015 Phone.

The defendants' expert charged $5,375 for his services examining the two phones. Defendants have moved pursuant to Fed. R. Civ. P. 37(b)(2)(A) to recover these fees, as well as attorney's fees, as a sanction for plaintiff's failure to obey a discovery order.

Mr. Gluck's conduct throughout the course of this litigation has been concerning. Mr. Gluck failed to appear for an initial pretrial conference scheduled for December 7, 2018.

That conference was rescheduled to December 11.  Mr. Gluck did not appear at the rescheduled December 11 conference either, instead sending another attorney, Herbert Moreira-Brown.  Mr. Moreira-Brown had not filed a notice of appearance and did not appear on the ECF docket for this case.  Mr. Moreira-Brown was unfamiliar with the facts of the case.  On December 19, the Court ordered Moreira-Brown to file a notice of appearance on ECF and ordered Mr. Gluck to appear for a conference on January 4, 2019 if the error was not promptly corrected.  On December 21, Mr. Gluck submitted a letter to the Court indicating that Mr. Moreira-Brown was experiencing technical difficulties with the ECF system and that his appearance would be entered shortly.  Mr. Gluck attended the conference on January 4, 2019, at which he was directed to appear as principal trial counsel at all future conferences.  As of the filing of this Opinion, Mr. Moreira-Brown's appearance in this action has not been filed on ECF.

In addition, Mr. Gluck twice failed to meet his deadline to respond to the instant motion as well as defendants' motion for summary judgment.  He instead filed eleventh-hour requests for extensions, which the Court granted <u>nunc pro tunc</u>.

This appears to be part of a pattern of troubling conduct on the part of Mr. Gluck in this district.  On March 8, 2018, a case brought by Mr. Gluck in this district was dismissed under

Fed. R. Civ. P. 4(m) for failure to timely effectuate proper service.  Levitant v. Workers Compensation Board of New York, 16cv6990(ER), 2018 WL 1274734 (S.D.N.Y. Mar. 8, 2018).  On October 24, 2018, another of Mr. Gluck's cases in this district was dismissed for lack of prosecution after Mr. Gluck failed to respond to a Notice to Arbitrate by a court-ordered deadline. Bennerson v. Collins Bldg. Serv. Inc., 18cv2244(JPO), ECF No. 19 (S.D.N.Y. Oct. 4, 2018).  On March 19, 2019, claims brought by another of Mr. Gluck's clients were dismissed pursuant to Fed. R. Civ. P. 4(m) for failure to serve one of the defendants, after an order to show cause was issued.  Martinez v. SEIU Local 32BJ, 18-CV-3961, 2019 WL 1259381, at *2 (S.D.N.Y. Mar. 19, 2019).  Finally, Mr. Gluck has repeatedly failed to comply with court-ordered deadlines to respond to defendants' discovery requests, resulting in several months' delay of another litigation.  Brown v. Bronx Lebanon Hospital Ctr., 18cv1156(WHP), ECF No. 52 (S.D.N.Y. June 21, 2019).

Mr. Gluck has had similar issues in the Eastern District of New York.  In 2015, he was publicly reprimanded for disregarding court orders in over ten federal actions and failing to appropriately communicate with clients.  In re Gluck, 114 F. Supp. 3d 57 (E.D.N.Y. 2015).

**Discussion**

Rule 16(f) Fed. R. Civ. P., provides that a court may, on motion or on its own:

> issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney: (A) fails to appear at a scheduling or other pretrial conference; (B) is substantially unprepared to participate -- or does not participate in good faith -- in the conference; or (C) fails to obey a scheduling or other pretrial order.

Under Rule 37, Fed. R. Civ. P., courts may impose "a wide range of sanctions . . . for discovery abuses." Mali v. Federal Ins. Co., 720 F.3d 387, 392 (2d Cir. 2013). Fed. R. Civ. P. 37(b)(2)(A) provides that when "a party . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders," including "dismissing the action or proceeding in whole or in part." Rule 37(b)(2)(C) provides that "[i]nstead of or in addition to the orders [listed in Rule 37(b)(2)(A)-(B)], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

"Where, as here, the nature of the alleged breach of a discovery obligation is the non-production of evidence, a district court has broad discretion in fashioning an appropriate

8

sanction . . . ." Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 106 (2d Cir. 2002). Factors courts may consider in exercising their discretion to impose sanctions include "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." S. New England Tel. Co. v. Glob. NAPs Inc., 624 F.3d 123, 144 (2d Cir. 2010) (citation omitted). "[T]hese factors are not exclusive, and they need not be resolved against" the sanctioned party in order to find that sanctions are appropriate. Id.

The plaintiff was detained on August 6, 2015 after a minor asserted that the plaintiff had taken pictures of him in a men's room stall at Penn Station. Mr. Gluck filed this action against the investigating officers without, apparently, determining whether his client still retained the 2015 Phone. During discovery, Mr. Gluck made misrepresentations and ignored Court orders. He represented that his client did not have access to the phone or SIM card, but then reversed this position nine days later. After informing defense counsel that he was in possession of the 2015 Phone and was preparing copies of its contents, he failed to produce those copies or respond to defense counsel's inquiries until ordered to do so. He failed

9

to produce the SIM card after being ordered to do so.  He then represented that his client had told him that he did not have access to the phone's SIM card.  As became clear at the plaintiff's deposition, that was not true.  He then produced two phones and made confusing representations about which phone was the 2015 Phone.  As it turned out, neither was.  Because Mr. Gluck failed to identify the correct phone, and then made misrepresentations about the phone, the defendants incurred significant costs.

The plaintiff argues that sanctions are not appropriate here because the requested discovery was not relevant.  Not so.  The 2015 Phone is at the center of this lawsuit.  Moreover, any argument as to the relevance of the requested discovery is misplaced at this stage in the litigation.  Plaintiff raised his relevance objection at the time the defendants requested to inspect the 2015 Phone.  Despite those objections, plaintiff was ordered to produce the 2015 Phone and SIM card.  His relevance objections cannot excuse his failure to comply with a court order.

Further, as described above, this was not the first time that plaintiff's counsel, Mr. Gluck, has failed to comply with a court order during the course of this litigation.  And, his failures in this case appear to be part of a pattern by Mr. Gluck in representing plaintiffs in federal court litigation.

10

Pursuant to Rule 37, "the disobedient party, the attorney advising that party, or both" may be ordered to pay reasonable costs and attorneys' fees associated with the sanctioned party's failure to produce materials in discovery. Fed. R. Civ. P. 37(b)(2)(C); see also Fonar Corp. v. Magnetic Resonance Plus, Inc., 128 F.3d 99 (2d Cir. 1997) (sanctions awarded against plaintiff's attorney). It is Mr. Gluck who has delayed the litigation and caused the defendants to incur unnecessary costs by failing to adequately communicate with his client, adversary counsel and the Court, and by ignoring court orders. Accordingly, sanctions will be awarded only against Mr. Gluck, and not against his client.

## Conclusion

The Defendants' April 19 motion for reimbursement of their costs incurred in connection with the examination of two cell phones in the amount of $5,375, and for reasonable attorney's fees in connection with their efforts to obtain and examine the 2015 Phone, is granted with respect to Mr. Gluck.[1] A separate

---

[1] Defendants have also requested that this case be dismissed as a sanction pursuant to Fed. R. Civ. P. 37(b)(2)(A). Because the case has already been dismissed on the merits, this request is moot. See Williams 2019 WL 2992329.

11

Order will set a schedule for submissions on the amount of the fee award.

Dated: New York, New York
July 30, 2019

                                      _____
                                             DENISE COTE
                                    United States District Judge